```
                    UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         NORTHERN DIVISION


DANIEL KELLEY                                          PLAINTIFF

VS.                                  CIVIL NO. 3:14cv00512DPJ-FKB

J. BUSCHER, ET AL.                                     DEFENDANT




                         OMNIBUS HEARING



                BEFORE THE HONORABLE F. KEITH BALL,
                   UNITED STATES MAGISTRATE JUDGE
                         OCTOBER 22, 2014
                       JACKSON, MISSISSIPPI



APPEARANCES:

FOR THE PLAINTIFF:     MR. DANIEL KELLEY, PRO SE

FOR DEFENDANT BUSCHER: MR. STEVEN GRIFFIN

FOR DEFENDANTS LITTLE and EDWARDS:  MR. ROBERT PEDERSEN




REPORTED BY:  CHERIE GALLASPY BOND
              Registered Merit Reporter
              Mississippi CSR #1012

_____
                245 E. Capitol Street, Room 120
                  Jackson, Mississippi  39201
                        (601) 965-4410
```

**EXHIBIT A**

1        THE COURT:  Court calls *Daniel Kelley v. J. Buscher,*
2   *et al.*  This is cause number 3:14cv512.  Mr. Kelley, if you'll
3   raise your right hand, please, sir.
4        (Plaintiff Sworn)
5            THE COURT:  State your full name for the record.
6            MR. KELLEY:  Daniel George Kelley.
7            THE COURT:  And now I'll have defense counsel identify
8   themselves for the record as well as the defendants on whose
9   behalf they are appearing.
10           MR. GRIFFIN:  Your Honor, Steven Griffin on behalf of
11  Jerry Buscher.
12           MR. PEDERSEN:  Bob Pedersen on behalf of defendants
13  Ollie Little and Dr. Derrick Edwards.
14           THE COURT:  Mr. Kelley, have you ever been through one
15  of these omnibus hearings before?
16           MR. KELLEY:  No, sir.
17           THE COURT:  My name is Keith Ball.  I'm the magistrate
18  judge assigned to your case.  There's also a district judge
19  assigned to your case, Judge Dan Jordan.  Your case falls under
20  the Prison Litigation Reform Act, and one of the things that
21  the court must do in such cases is to screen your complaint to
22  see whether you have stated a claim upon which relief can be
23  granted.  By that, I mean the court's going to look at the
24  facts that you're alleging in your complaint and look at the
25  law, the applicable law, and see whether it's a case that can

1    go forward in this court.  Do you understand?

2             MR. KELLEY:  Yes, sir.

3             THE COURT:  All right.  Before we get into talking
4    about your complaint, I want to address some procedural
5    matters.  As I said, there's a district judge and me as the
6    magistrate judge assigned to your case.  You can consent to
7    magistrate judge jurisdiction.  If you do that, then there
8    would only be one judge assigned to your case and that would be
9    me.  If you don't consent, then I'm still going to do what's
10   called a report and recommendation to the district judge
11   recommending to the district judge how he should rule on
12   certain things, and he will either adopt that or not adopt
13   that.

14            If you consent to magistrate judge jurisdiction, then
15   we would skip that step so the process would go a little
16   faster.  Also Judge Jordan, the district judge, has cases set
17   for trial every month, and I don't.  So, in short, I'm just
18   saying the process would go a little faster if you consent to
19   magistrate judge jurisdiction.

20            I want you to understand that if you consent to
21   magistrate judge jurisdiction, I'm going to apply the same law
22   that Judge Jordan would.  I would apply the same rules, the
23   same rules of procedure and same rules of evidence.  And if you
24   disagreed with rulings that I made, you could appeal me to the
25   Court of Appeals just like you could the district judge.

1           Now, understanding that -- and if you have any
2  questions, just let me know -- do you want to consent to
3  magistrate judge jurisdiction?
4           MR. KELLEY:  No, sir, not right now.
5           THE COURT:  Okay.  All right.  Let's go on to the
6  other part of the hearing.  And, as I said, keep in mind that
7  what I'm doing is screening your complaint to see whether it is
8  one that can go forward.  We have your complaint.  You don't
9  have to repeat what you already have in your complaint.  But if
10 you do feel like there's something I need to understand in
11 determining whether you have stated a claim or not, this is
12 your opportunity to do it.
13          Your claim, as I understand it, is that you are --
14 you're making a claim that you were denied medical care, more
15 specifically that you saw a dentist in September of 2013 at
16 Parchman, I think it was, for sore, swollen, and bleeding gums,
17 that you were prescribed some antibiotics and scheduled for a
18 followup appointment on September 30th, 2013.  But on
19 September 25th, 2013, you were moved to East Mississippi
20 Correctional Facility.
21          Your claim is that after you were transferred to East
22 Mississippi, they stopped your antibiotics, that you weren't
23 seen by a dentist until June 15th, 2014, at which time the
24 tooth was pulled and you are essentially saying that you lost
25 the tooth because of a delay in treatment.

1      MR. KELLEY:  Even after putting in sick calls -- from
2 the time I got to EMCF, I started putting in sick call requests
3 to see a dentist about it.  And even now four months later, my
4 gums still bleed.  I can spit mouthfuls of blood several times
5 daily.  My gums are still sore.  All they did was pull a tooth
6 out, and they didn't address none of the other issues as far as
7 my gums swollen and bleeding and sore.
8      When I eat -- my gums hurt when I eat and bloody.  I
9 wake up in the mornings.  My sheet is full of blood done leaked
10 out over my sheets.  I've got to wash my sheets two or three
11 times.  Just they didn't address nothing but pull my tooth out.
12      THE COURT:  Okay.  What is your diagnosis?
13      MR. KELLEY:  I don't know.  He didn't tell me nothing.
14 The doctor -- the dentist at Parchman told me that I had a bad
15 case of gingivitis.  I didn't have no teeth that needed to be
16 pulled out at the time.  They needed to be cleaned.  And he put
17 me on antibiotics.  Two days later I was transferred to EMCF.
18 I didn't receive any more antibiotics.  And even though I
19 turned in several sick calls at least once a week, I didn't see
20 the dentist until June 15th when Ms. Nato -- she's the one that
21 got in touch with the officials to get me up there to see the
22 dentist in June.
23      And even after that, he just pulled the tooth out and
24 took an X ray of it.  He pulled the tooth and sent me back to
25 the zone.  He prescribed some type of antibiotics, but I got

1    them for like two or three days and that was it.  It didn't
2    affect nothing.
3            THE COURT:  All right.  Why are you -- you've sued
4    three defendants.  Why are you suing Defendant Buscher?
5            MR. KELLEY:  Because the warden, he's responsible for
6    making sure that I get dental treatment, him and -- he has
7    overall responsibility.
8            THE COURT:  Okay.  You're not claiming that he
9    personally did something or failed to do something?
10           MR. KELLEY:  He personally failed to make sure that
11   the medical department -- make sure that I was brought up there
12   all the time, and make sure that sick call requests were
13   screened.  I mean, that's the warden's responsibility and
14   health service administrator's responsibility to make sure that
15   inmates' sick call requests are screened and they get up there
16   on time.
17           THE COURT:  Is it your -- what's the basis of your
18   testimony that the warden is responsible for going through all
19   of the sick call requests?
20           MR. KELLEY:  He's not responsible for going through
21   each of them.  He's responsible for making sure that inmates
22   get their reasonably adequate and prompt treatment.  He's not
23   responsible to go through each of the sick call requests, but
24   he's got a responsibility to make sure that, you know, if an
25   inmate has a serious medical need, you know, him and the health

1    service administrator, they are responsible for making sure
2    that it's addressed.
3             THE COURT:  You're suing him because of his position
4    for being the warden and being the one that's ultimately in
5    charge of the facility?
6             MR. KELLEY:  Yes, sir.
7             THE COURT:  Defendant Little:  Why are you suing
8    Defendant Little?
9             MR. KELLEY:  Because over -- he's in charge -- he's
10   the health services administrator, and his responsibility, as I
11   said, is the same almost the same as Defendant Buscher.
12            THE COURT:  Did you have any personal dealings with
13   Defendant Little?
14            MR. KELLEY:  Just the second -- responsible for
15   whether they finally responded to my ARP.  He said he's going
16   to get me up there on the 15th of June.
17            THE COURT:  Prior to the ARP process, did you have any
18   personal contact with Little?
19            MR. KELLEY:  No, sir.
20            THE COURT:  Defendant Edwards:  Why are you suing
21   Defendant Edwards?
22            MR. KELLEY:  He was second-step responder on the ARP.
23   He didn't address anything as far as the reason for the eight
24   and a half month delay and, you know, during the eight and a
25   half months, my gums were swollen, sore, and bleeding.  I

1  couldn't eat.  If I eat, I had to soak my food to soften it up,
2  spitting blood, my teeth hurting, hurting all down my neck.
3           THE COURT:  But I understand what you're claiming your
4  injuries were and the pain that you went through, but I'm
5  asking you what are you claiming that Defendant Edwards
6  personally did or failed to do with respect to your treatment?
7           MR. KELLEY:  Dr. Edwards didn't do anything.  I
8  included him because he was the third-step responder on the
9  ARP.  So he knew about it.  I had filed separate ARPs before,
10 you know, the April 2nd ARP.  I sent a couple of them up there
11 and so they knew that -- the ARP department, they knew that I
12 had dental problems and it was -- but with that and my sick
13 call requests, nothing was done.
14          THE COURT:  All right.  Did you go to sick call at all
15 during this time period?  Did you ever go to medical there at
16 the facility?
17          MR. KELLEY:  I went up there on February 27th, I think
18 it was.  I went up there about a cold.  And I asked the nurse
19 about my tooth, and she said I'm probably on the list but that
20 was it.  And I told her there it was a hole in it and it was
21 bleeding and hurt and aching, and all she said was I was
22 probably on the list and this was it.  But I wasn't called up
23 there because of that.  I was called up because I had a cold.
24          THE COURT:  Okay.  All right. Does defense counsel
25 have any questions?

1            MR. PEDERSEN:  Yes, Your Honor.  Bob Pedersen.
2   Mr. Kelley, after your tooth was extracted, that was in June of
3   2014.  Is that correct?
4            MR. KELLEY:  Yes, sir.
5            MR. PEDERSEN:  Have you been to see anybody about your
6   problem with your gums since that?
7            MR. KELLEY:  Well, on June 25th, the CO on the unit
8   came and got me and took me to medical about a sick call
9   request that I sent in on January 20th of this year and about
10  my tooth getting pulled out.  I told him about the gums still
11  bleeding and stuff.  And like I said, all I got after he pulled
12  the tooth out, I got antibiotics for like three days and some
13  mouthwash and that was it.  And I've still been sending sick
14  calls about my gums bleeding and bothering me and nothing has
15  been done.
16           MR. PEDERSEN:  Do you remember how many sick calls
17  you've put in about your gums since that last visit when you
18  got the antibiotics?
19           MR. KELLEY:  About four, five.
20           MR. PEDERSEN:  Do you remember what months you put
21  those in?
22           MR. KELLEY:  June, July, and August.
23           MR. PEDERSEN:  That's all the questions I have, Your
24  Honor.
25           THE COURT:  All right.

1         MR. GRIFFIN:  No questions.
2         THE COURT:  I think we have done all we needed to do
3    in this one today.
4         MR. GRIFFIN:  On behalf of Defendant Buscher, I did
5    bring a preliminary exhibit witness as well as the inmate's
6    institutional records and ARP file related to this matter.
7         THE COURT:  Let the record reflect those documents are
8    being produced at this time.  Mr. Pedersen?
9         MR. PEDERSEN:  Your Honor, we have brought on behalf
10   of Defendants Little and Edwards an exhibit list, a witness
11   list, and selected medical records that are Bates numbered
12   Kelley 1 through Kelley 38.
13        THE COURT:  All right.  Let the record reflect that
14   those document are being produced at this time.  Mr. Kelley?
15        MR. KELLEY:  Before I got your order about the omnibus
16   hearing, I had sent in because I had never -- this is -- I only
17   had one other case that I sent in a request for production of
18   documents, initial disclosure, and --
19        THE COURT:  I will issue an order that will advise
20   whether any discovery will be allowed.  So your sending
21   discovery was premature in the case.  If you did send some, the
22   defendants are not required to answer it at this time, and I'll
23   issue an order that will direct whether there's going to be any
24   discovery allowed in this case.
25        MR. KELLEY:  My ARP documents, what do you --

1       THE COURT:  What about them?
2       MR. KELLEY:  Just to show that I did exhaust remedies
3  before I filed and such.
4       THE COURT:  I don't believe the defendant has filed a
5  motion for summary judgment based on failure to exhaust
6  administrative remedies.  If it's not raised, it is not an
7  issue.  If it is raised, if they were to file such a motion,
8  then you would be required within 14 days of that motion being
9  filed to respond to it.  And you would write up something.  And
10 if you have the ARP forms, you'd be required to -- that show
11 that you completed the process prior to filing suit, you'd need
12 to send that in.  Okay?
13      MR. KELLEY:  What do I do with the exhibit list, paper
14 and --
15      THE COURT:  You brought your exhibit list and witness
16 list today?
17      MR. KELLEY:  Yes, sir.
18      THE COURT:  Okay.  You can provide that to
19 Ms. Kimball.  We'll make a copy.  Did you bring a copy, or is
20 that the only one you have?
21      MR. KELLEY:  That's what I have on my initial
22 disclosure and such.  So I don't need a copy back.
23      THE COURT:  Okay.  All right.  Okay.  Thank you very
24 much.  This matter is adjourned.
25    (Recess)

```
 1                    CERTIFICATE OF REPORTER

 2

 3         I, CHERIE GALLASPY BOND, Official Court Reporter, United

 4   States District Court, Southern District of Mississippi, do

 5   hereby certify that the above and foregoing pages contain a

 6   full, true and correct transcript of the proceedings had in the

 7   aforenamed case at the time and place indicated, which

 8   proceedings were recorded by me to the best of my skill and

 9   ability.

10         I certify that the transcript fees and format comply

11   with those prescribed by the Court and Judicial Conference of

12   the United States.

13

14         This the 29th day of October, 2014.

15

16              s/ Cherie G. Bond
                Cherie G. Bond
17              Court Reporter
```