IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DANIEL KELLEY, #L2563**                                                                 **PLAINTIFF**

**V.**                                       **CIVIL ACTION NO. 3:14-cv-512-DPJ-FKB**

**J. BUSCHER, ET AL**                                                   **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS DERRICK EDWARDS, M.D. AND OLLIE LITTLE**

The Complaint alleges that while Plaintiff Daniel Kelley was at the Mississippi State Penitentiary (MSP), a dentist treated with medications Plaintiff's sore, swollen and bleeding gums, but that after Plaintiff was transferred to East Mississippi Correctional Facility (EMCF), the medications were discontinued. After his arrival at EMCF, Plaintiff Kelley alleges he submitted 30 or more sick call requests for dental care. Eight and a half months after submitting the first sick call request, the Complaint alleges that Plaintiff Kelley was seen by a dentist at EMCF. The dentist pulled a tooth and cleaned Plaintiff's teeth. [ Dkt. 1 at 5-8][1]. According to the Complaint, Plaintiff brought this action against Defendant Derrick Edwards, M. D. and Defendant Ollie Little because they were responsible for the eight and half month delay and because their delay-causing acts and omissions constitute "deliberate indifference" and, therefore, violated the Eighth Amendment to the United States Constitution. [Dkt. 1 at 8-9].

At the Omnibus hearing, Plaintiff expanded his claim. Plaintiff testified the tooth had to be pulled because of the eight and half month delay, and he testified that the Defendants did nothing

---

[1] This pleading is Plaintiff's Complaint and a copy is attached to the Motion for Summary Judgment as Exhibit C.

to provide him treatment for his swollen, bleeding and sore gums. (Exhibit A at 4-5).

At the Omnibus hearing, Plaintiff testified that he sued Defendant Little because he is the Health Service Administrator and is in charge of the Medical Department at EMCF and because Defendant Little made the initial response to Plaintiff's grievance (ARP). (Exhibit A at 7 ). Plaintiff testified that he sued Defendant Edwards, because he made the "second-step" response to Plaintiff's ARP, but never explained the eight and half month delay and never addressed Plaintiff's need for treatment for his bleeding, swollen and sore gums. (Exhibit A at 7-8).

Defendants Little and Edwards seek summary judgment because Plaintiff cannot show they acted with "deliberate indifference" by delaying Plaintiff's dental treatment and by failing to treat his bleeding, swollen and sore gums. Instead, the undisputed material facts show that Defendant Little on June 12, 2014, first learned about Plaintiff's need for dental care when he was given a copy of Plaintiff's ARP. Within three days after Defendant Little received the ARP, Plaintiff was seen by a dentist and the dentist pulled one of Plaintiff's teeth and treated Plaintiff for gingivitis. The undisputed material facts show that Defendant Edwards did not learn about Plaintiff's need for dental treatment until three days after the dentist treated Plaintiff Kelley, when Defendant Edwards, on June 18, 2014, prepared the "second step" response to Plaintiff's ARP.

These undisputed facts show that Plaintiff is unable to establish the subjective component for the "deliberate indifference" requirement of his Eighth Amendment claim and, therefore, Defendants Little and Edwards ask the Court to grant them summary judgment and dismiss with prejudice the claims Plaintiff makes against them.

## SUMMARY JUDGMENT STANDARD

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

F. R. C. P. 56(a).

Under Rule 56 (a), summary judgment is required when the undisputed facts show that the plaintiff is unable to establish an essential element of his claim. *Cowan v. Calcote*, No. 3:07-CV-585-DPJ-FKB, 2011 WL 2489914, at *1 (S.D. Miss. June 21, 2011) ("The rule 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).").

## **LEGAL STANDARD**

Plaintiff's claim for denial of dental care is governed by the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) ("We therefore conclude that **deliberate indifference** to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia, supra*, at 173, 96 S. Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment." (emphasis added)).

To prove "deliberate indifference" a plaintiff must satisfy (1) an "objective" component and (2) a "subjective" component.

> In order to prove that a denial of medical care constituted cruel and unusual punishment, the plaintiff must demonstrate that prison officials showed "deliberate indifference to serious medical needs." [*Estelle v. Gamble*], *Id*. at 104, 97 S. Ct. 285. **First,** the plaintiff must show that he had an objectively serious medical need, i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970. **Second**, the defendants must have acted with a "sufficiently culpable state of mind," *id.*; "that is, [they] must have been aware of the prisoner's medical need and disregarded an excessive risk that a

lack of treatment posed to the prisoner's health or safety." *Dye v. Lomen*, *491 40 Fed. Appx. 993, 996 (7th Cir.2002) (citing *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir.2001)).

*Adams v. Banks*, 663 F. Supp. 2d 485, 490-91 (S.D. Miss. 2009)(emphasis added).

For this motion, Defendants assume Plaintiff Kelley can satisfy the **first** (objective) element by showing that his need for dental treatment was a "serious medical need".

Defendants seek summary judgment because Plaintiff cannot establish the **second** (subjective) element—that is, Plaintiff cannot show Defendants knew that Plaintiff needed dental care, realized that the failure to provide Plaintiff with dental care would likely adversely affect Plaintiff's health but, nonetheless, waited eight and a half months before scheduling Plaintiff to be treated by a dentist.

## FACTUAL SUMMARY

Defendant Little is the Health Services Administrator at EMCF. [ Dkt. 13 at 1]. Defendant Edwards is a medical doctor and was previously employed by Health Assurance LLC to provide medical treatment for inmates incarcerated at EMCF. [Dkt. 12 at 1].

A chronology of the events related to Plaintiff Kelly's dental treatment claim follows.

9/23/2013   Dr. Benford (dentist) sees Plaintiff at the Mississippi State Penitentiary (MSP) for Plaintiff' sick call request about bleeding gums. Dr. Benford's diagnoses is gingivitis[2] and he prescribes Penicillin VK 500 mg to be given on September 25-30 and

---

[2]

Gingivitis is a common and mild form of gum disease (periodontal disease) that causes irritation, redness and swelling (inflammation) of your gums. Because gingivitis can be mild, you may not be aware that you have the condition. But it's important to take gingivitis seriously and treat it promptly. Gingivitis can lead to much more serious gum disease (periodontitis) and eventual tooth loss.

The most common cause of gingivitis is poor oral hygiene. Good oral health habits, such as brushing at least twice a day, flossing daily and getting regular dental checkups, can help prevent gingivitis.

(http://www.mayoclinic.org/diseases-conditions/gingivitis/basics/definition/con-20021422).

|  |  |
|---|---|
| | Ibuprofen 800 mg. to be given as needed[3]. (Exhibit B at Kelley 1-2, 20, 30). |
| 9/23-25/2013 | While Plaintiff was at MSP, the Ibuprofen was given on September 23 and the Penicillin was given on September 23, 24 and 25. (Exhibit B at Kelley 29-30). |
| 9/25/2013 | Plaintiff Kelley was transferred from MSP to EMCF. [Dkt. 1 at 5; Dkt. 19-1 at 4[4]]. |
| 9/25-30/2013 | After Plaintiff arrived at EMCF, Tylenol is given on September 25 and Penicillin was given on September 25, 26, 27, 28, 29 and 30. (Exhibit B at Kelley 33). |
| 10/14/2013 | RN Sandra Atwood sees Plaintiff Kelley in response to his October 9 sick call requests for chest pains. Plaintiff denies any other symptoms such as shortness of breath and sweating and tells nurse Atwood that he has never had an EKG. No mention is made of dental problems in this sick call request. (Exhibit B at Kelley 3). |
| 10/18/2013 | Plaintiff does not show for lab work and an EKG. (Exhibit B at Kelley 5). |
| 10/30/2013 | Plaintiff does not show for lab work and an EKG. (Exhibit B at Kelley 6). |
| 11/16/2013 | Plaintiff submits a sick call request about hearing voices and not receiving his mental health medication, Haldol. No mention is made of dental problems in this sick call request. On 11/18/2013, Mental Health Counselor Naylor responds to the request, monitors him for his psychiatric and clinical needs and refers Plaintiff to the psychiatrist. (Exhibit B at Kelley 21). |
| 12/3/2013 | Plaintiff submits a sick call request asking that the dosage of certain mental health medications be increased and that he be provided a pack of crackers at evening medication call so that he doesn't get nauseated when he takes his medications. No mention is made of dental problems in this sick call request. On December 3, Mental Health Counselor Lockett referred Plaintiff to the psychiatrist and continued to monitor his psychiatric needs. (Exhibit B at Kelley 22). |
| 12/13/2013 | Plaintiff submits a sick call request stating that he has been having chest pains for the last two days. No mention is made of dental problems in this sick call request. Registered Nurse Duff takes his vital signs and reports that he has no complaints when she sees him. (Exhibit B at Kelley 23). |

---

[3] The prescription was "PRN". "PRN, the abbreviation of Pro re nata in latin, means as the circumstance arises or in the circumstance. It is commonly used in medicine to signify a medication that should be taken only when needed, as opposed to medications that should be taken strictly at a given time with a given dosage." (http://www.newhealthguide.org/Prn-Medication.html).

[4] This pleading is Plaintiff's "disclosure" and a copy is attached to the Motion for Summary Judgment as Exhibit D.

| | |
|---|---|
| 1/20/2014 | Plaintiff submits a sick call requests saying that he needs to see a dentist because his tooth hurts and his gums are bleeding. On June 25, 2014, Dr. Rembert (dentist) responds that he has already been seen. On that same date, plaintiff Kelley signs the form acknowledging that no co-payment charge was made against Plaintiff Kelly's inmate account for the dental treatment. **The names of Defendant Little and the Defendant Edwards do not appear on the form**. (Exhibit B at Kelley 24). |
| 2/4/2014 | Plaintiff submits a sick call request about a rash on the inside of his left thigh. No mention is made of dental problems in this sick call request. When Registered Nurse Duff sees Plaintiff he says nothing about a rash and tells her that he has a cold but she finds he has no signs or symptoms of a cold. (Exhibit B at Kelley 7, 25). |
| 2/6/2014 | A mental health counselor responds to Plaintiff's sick call requests about hearing voices and about his mental health medications and the counselor refers him to the psychiatrist or the psychiatric nurse practitioner for evaluation. No mention is made of dental problems in this sick call request. (Exhibit B at Kelley 26). |
| 4/2/2014 | Plaintiff Kelley submits an Emergency ARP for dental services. He claimed the medications prescribed by the MSP dentist had been discontinued and he claimed he had submitted at least 15 sick call request for dental treatment but he had received no response. [Dkt. 1 at 6, 12-13; Dkt. 19-1 at 2, 4-5]. |
| 5/2/2014 | A mental health counselor responds to Plaintiff's April 30 sick call request in which he asks why he is not receiving his medications in the mornings. No mention is made of dental problems in this sick call request. (Exhibit B at Kelley 8-9, 27). |
| 5/14/2014 | APR Clerk Naidow responds to Plaintiff Kelly's May 12 request for the status of his ARP and tells him that an Emergency ARP goes directly to MDOC and MDOC has not yet accepted his Emergency ARP. [Dkt. 1 at 15;Dkt. 19-1 at 2, 7] |
| 5/20/2014 | A mental health counselor responds to Plaintiff's sick call request in which he asks that his medications be re-started because he is hearing voices and can't sleep. He is referred to a psychiatrist or to the psychiatric nurse practitioner. No mention is made of dental problems in this sick call request. (Exhibit B at Kelley 10-11, 28). |
| 5/22/2014 | Plaintiff Kelley submits a Second Step Appeal for his Emergency ARP, even though he had not received a response to the ARP. He claims that he has submitted over 30 sick call requests to see the dentist since 9/25/2013. [ Dkt. 1 at 6, 19-22 ;Dkt. 19-1 at 2, 8-11]. |
| 5/29/2014 | A mental health counselor responds to Plaintiff's complaint that he is not receiving his medications. No mention is made of dental problems. (Exhibit B at Kelley 12). |

| | |
|---|---|
| 6/02/2014 | ARP Clerk Naidow responds to Plaintiff Kelly's inquiry about his Second Step Appeal for his Emergency ARP and tells him that his ARP about dental care is not in the computer. [Dkt. 1 at 16; Dkt. 19-1 at 2, 12]. |
| 6/12/2014 | ARP Clerk Naidow tells Plaintiff Kelley that MDOC mistakenly returned his ARP because MDOC thought it had already been addressed. ARP Clerk Naidow tells Plaintiff Kelley that she had told Defendant Little that Plaintiff's ARP was an emergency request and Defendant Little told ARP Clerk Naidow that he had scheduled Plaintiff Kelley to be brought to the medical department on Sunday to see the dentist. [Dkt. 1 17; Dkt. 19-1 at 3, 13]. |
| 6/12/2014 | Defendant Little completed the First Step Response Form for Plaintiff's ARP (EMC-14-1326) and stated that Plaintiff Kelley was scheduled to be seen by the dental department that week and that Defendant Little would coordinate with MTC correctional officers to make certain Plaintiff Kelley is brought to his appointment. [Dkt. 1 at 24; Dkt. 19-1 at 3, 14]. |
| 6/15/2014 | Dr. Rembert (dentist) sees Plaintiff Kelley for his complaint of toothache and bleeding gums. Dr. Rembert extracts tooth 19[5] because of "caries involvement" that is, because it is decayed.[6] Dr. Rembert's periodontal diagnoses is gingivitis. For the gingivitis, Dr. Rembert had Plaintiff Kelly's teeth cleaned[7] and prescribed Penicillin VK 500 mg and Peridox 0.12% solution. The Penicillin was given June 18 through June 24 and the Paradox solution was given on June 30 as a "keep-on-person" medication to swish and spit for 16 days. (Exhibit B at Kelley 14-16, 35). |
| 6/18/2014 | Defendant Edwards completes the Second Step Response Form for Plaintiff's ARP (EMC-14-1326) and responds that Plaintiff Kelly's complaint about his dental care has been appropriately addressed by Defendant Little and that no further action is needed. [Dkt. 1 at 27; Dkt. 19-1 at 15]. |

---

[5] Under the Universal Numbering System, tooth 19 is the First Molar on the lower left side. (http://www.americantooth.com/downloads/instructions/Dental_Sys_Permanent_Teeth.pdf).

[6] "Dental caries or cavities, more commonly known as tooth decay, are caused by a breakdown of the tooth enamel. This breakdown is the result of bacteria on teeth that breakdown foods and produce acid that destroys tooth enamel and results in tooth decay." (http://www.cdc.gov/healthywater/hygiene/disease/dental_caries.html).

[7] Dr. Rembert's comment "adult prophy" (Exhibit B at Kelly 15), is short for "adult prophylaxis", which means cleaning of the teeth. ("A dental prophylaxis is a cleaning procedure performed to thoroughly clean the teeth. Prophylaxis is an important dental treatment for halting the progression of periodontal disease and gingivitis." http://www.hubrichdental.com/adult-services/periodontics/prophylaxis-teeth-cleaning/).

**ARGUMENT**

The Fifth Circuit has "recognized that a prisoner presented a cognizable Eighth Amendment claim where prison officials denied him access to dental care for his broken jaw and forced him to eat solid food." *Green v. Hendrick Med. Ctr.*, 251 F.3d 157 at*4 (5th Cir. 2001), *citing*, *Harris v. Hegmann*, 190 8F 3rd 153, 159-160 (5th Cir. 1999).

In *Green v. Hendrick Med. Ctr.* the Fifth Circuit also cited examples where other courts found that the factual allegations stated an Eighth Amendment claim for failure to provide dental care:

- ♦ " [W]here an inmate's lost dentures caused him bleeding gums, interfered with his ability to eat, and permanently damaged his teeth, but prison officials failed to relieve his pain or prescribe a soft food diet." *Green v. Hendrick Med. Ctr.*, 251 F.3d 157 at*4, *citing*, *Hunt v. Dental Department*, 865 F 2nd 198, 200 (9th Cir. 1989).

- ♦ Where "a prison dentist's refusal to fill a cavity rose to the level of deliberate indifference, because the tooth deteriorated to the point that it had to be pulled . . . [and] the prisoner's inability to chew properly caused extreme pain and impaired his daily activities." *Green v. Hendrick Med. Ctr.*, 251 F.3d 157 at*4, *citing*, *Chance v. Armstrong,* 143 F.3d 698, 702-03 (2d Cir.1998).

- ♦ Where "a prison dentist . . . left a cavity untreated for one year after discovering the condition. *Green v. Hendrick Med. Ctr.*, 251 F.3d at*4 157, *citing*, *Harrison v. Barkley*, 219 F.3d 132, 137-39 (2d Cir.2000).

The foregoing factual allegations are strikingly different from the facts surrounding Plaintiff Kelly's dental care.

Plaintiff Kelley can produce no evidence that Defendant Little or Defendant Edwards denied

him dental care. Instead, the evidence shows that within three days after ARP Clerk Naidow told Defendant Little of Plaintiff Kelly's need for dental care, Dr. Rembert (dentist) treated Plaintiff Kelley for his toothache and gingivitis.

Plaintiff Kelley can produce no evidence that Defendant Little or Defendant Edwards were aware of Plaintiff Kelly's alleged need of dental care for eight and half months. None of the sick call requests were directed to Defendant Little or Defendant Edwards. None of the medical records support Plaintiff Kelly's allegation that Defendant Little or Defendant Edwards knew for eight and half months that he needed dental care and ignored that need. The documents show that Defendant Little learned of Plaintiff Kelly's dental problems on June 12 and Dr. Rembert treated those dental problems on June 15, 2014. The documents show that Defendant Edwards did not learn about Plaintiff Kelly's dental need until 3 days after Dr. Rembert treated him.

Plaintiff Kelley can produce no evidence that Dr. Rembert had to extract tooth number 19 because of some act or omission of Defendant Little or Defendant Edwards. Dr. Rembert stated in his record that he pulled the tooth because it was decayed. There is no evidence that any act or omission by Defendant Little or Defendant Edwards caused Plaintiff Kelly's tooth to decay.

Plaintiff Kelley can produce no evidence that Defendant Little or Defendant Edwards refused to treat Plaintiff's sore, swollen and bleeding gums. In fact, Dr. Rembert cleaned Plaintiff's teeth and prescribed medications for Plaintiff's gingivitis.

Plaintiff Kelley cannot establish his claim against Defendant Little simply because he supervises the medical department. *Adams v. Banks*, 663 F. Supp. 2d 485, 490 (S.D. Miss. 2009) ("As a threshold matter, there is no respondeat superior liability on the part of supervisors.").

Plaintiff Kelley cannot establish his claim that Defendant Edwards violated the Eighth

Amendment by not fully responding to Plaintiff Kelly's ARP. The Fifth Circuit has held: "[A] prisoner does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances resolved to his satisfaction." *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011), *citing*, *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005).

For these reasons, Defendant Little and Defendant Edwards ask the Court to grant them summary judgment and to dismiss with prejudice all claims made against them by Plaintiff Kelley. RESPECTFULLY SUBMITTED, this the 2nd day of July, 2015.

                                                                      OLLIE LITTLE and
                                                                       DERRICK EDWARDS, M.D.

                                                                       */s/ Robert H. Pedersen*
                                                                       Robert H. Pedersen (MSB #4084)

OF COUNSEL:

Walter T. Johnson, Esq. (MSB #8712)
Robert H. Pedersen, Esq. (MSB #4084)
WATKINS & EAGER PLLC
P. O. Box 650
Jackson, Mississippi 39205
Phone: (601) 965-1900
wjohnson@watkinseager.com
bpedersen@watkinseager.com
       *Attorneys for Defendants Ollie Little and Derrick Edwards, M.D.*

**CERTIFICATE OF SERVICE**

       I, Robert H. Pedersen, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

       Steven James Griffin
       Daniel, Coker, Horton & Bell
       P. O. Box 1084
       Jackson, MS 39215-1084

    *Attorneys for Jerry Buscher*

and I certify that I mailed a true and correct copy of the above and foregoing by U.S. Mail, postage prepaid, to the following non-ECF participant:

  Daniel Kelley
  # 18277043
  F.C.I.
  PO Box 15330
  Ft. Worth, TX 76119

    *Pro Se Plaintiff*

Dated this the 2nd day of July, 2015.

            */s/ Robert H. Pedersen*