IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DANIEL KELLEY, #L2563     PLAINTIFF

vs.     CIVIL ACTION NO. 3:14-cv-512-DPJ-FKB

J. BUSCHER, ET AL.     DEFENDANTS

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
BY DEFENDANT JERRY BUSCHER**

COMES NOW Defendant Jerry Buscher, by and through counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and files this his Memorandum of Authorities in Support of his Motion for Summary Judgment, as follows:

**FACTUAL BACKGROUND**

This *pro se* prisoner suit filed pursuant to 42 U.S.C. § 1983 arises out of claims by Plaintiff Daniel Kelley regarding alleged violations of his constitutional rights. At all times relevant to the instant action, Plaintiff was a post-conviction inmate in the custody of the Mississippi Department of Corrections housed at East Mississippi Correctional Facility (EMCF). Defendant Jerry Buscher formerly served as senior warden at EMCF.

Plaintiff claims that on September 23, 2013, a dentist at the Mississippi State Penitentiary (MSP) examined him for his complaint of sore, swollen, and bleeding gums, told him he needed to have his teeth cleaned, diagnosed him with gingivitis, and ordered him antibiotics. *See* Complaint, Doc. [1], at 5. Plaintiff claims he was transferred to EMCF two days later, and his medications were subsequently discontinued. *Id*. Plaintiff further claims he submitted at least 30 sick call requests at EMCF regarding his dental condition, but he did not see a dentist until June 15, 2014 when he had a tooth pulled and had his teeth cleaned. *Id*., at 5-6. Plaintiff claims the delay of approximately

eight-and-a-half months between the time he was transferred to EMCF and the time he was seen by a dentist constituted deliberate indifference by EMCF officials and ultimately resulted in him having to have a tooth pulled and receiving treatment for swollen and bleeding gums. *Id*., at 7-8.

Plaintiff and the other inmates housed at EMCF are instructed by their inmate handbooks that if they need non-emergency medical or dental services, they should fill out a Sick Call Request form. *See* EMCF Inmate Handbook, Exh. "B." Medical personnel collect the sick call requests on the housing units on a daily basis, and the requests are triaged by medical personnel to determine if an inmate will be seen immediately or scheduled for a regular sick call visit with a specific provider. *Id*.

Plaintiff's medical records indicate that he received frequent and routine medical and mental health treatment following his transfer to EMCF, beginning on the date of his arrival September 25, 2013. *See* Medical Records, Exh. "C," MTC0422-506. Between the time he arrived at EMCF and the time he saw dentist Alvin Rembert on June 15, 2014, he received attention from various providers on more than 80 separate occasions – most of which were for psychiatric issues. *Id*. The first time Plaintiff's medical records document any complaints about dental issues at EMCF was during a mental health assessment on February 28, 2014 with Mental Health Counselor Powe, where Plaintiff was noted as requesting to schedule an appointment with the dentist. *Id*., at MTC0484-486. It also was noted during that visit that "MHC Warren will walk the medical form to medical for dental [care]." *Id*., at MTC0485. Despite numerous visits with mostly mental health staff over the next three months, none of those records mention any complaints from Plaintiff regarding dental problems. *Id*., at 486-504 (Plaintiff seen on 5/13/14 for sick call request regarding psychiatric medications, no mention of dental issues, (MTC0492-95); Plaintiff seen on 5/20/14 for sick call

regarding psychiatric medications, no mention of dental issues (MTC0496-97); Plaintiff seen on 5/28/14 for sick call request regarding psychiatric medications, no mention of dental issues (MTC0499-500)).

Plaintiff was seen on June 15, 2014 by dentist Alvin Rembert in response to Plaintiff's sick call regarding a toothache and bleeding gums. *See* Exh. "C," at 505. Rembert diagnosed him with gingivitis, for which he had Plaintiff's teeth cleaned (adult prophylaxis) and prescribed him Penicillin V Potassium 500 mg tabs and Peridex 0.12% solution to swish in his mouth. *Id*. Rembert also extracted tooth #19 (first molar on bottom left) due to "caries involvement" (tooth decay). *Id*.

It is undisputed that Warden Buscher is not a dentist or otherwise trained medical provider. It is further undisputed that Warden Buscher had no involvement with screening sick call requests or scheduling inmates for appointments with medical providers. *See* Inmate Handbook, Exh. "B."

Plaintiff's only allegation against Warden Buscher is that he was allegedly sent a copy of Plaintiff's Second Step Appeal regarding the administrative grievance he filed requesting dental treatment, and that he did nothing about it. *See* Doc. [1], at 9. Plaintiff submitted his original administrative grievance through the MDOC Administrative Remedy Program (ARP) on or about April 2, 2014, requesting to see the dentist about a toothache and swollen and bleeding gums. *See* Doc. [1], at 12-14. On May 12, 2014, Plaintiff wrote to ARP Clerk Naidow regarding the status of his grievance, to which she replied two days later that the grievance had not yet been accepted or returned by MDOC. *See* Doc. [1], at 15. On or about May 22, 2014, Plaintiff submitted a Second Step Appeal regarding his ARP request despite not receiving a First Step Response, noting at the bottom for a copy to be sent to "ARP" and "Warden Buscher." *Id*., at 22. There is no evidence that Buscher ever received this document. Health Services Administrator Little responded to Plaintiff's

grievance on June 12, 2014, noting that he would be seen by the dentist that week. *Id*., at 24. As discussed *supra*, Plaintiff was treated by dentist Alvin Rembert on June 15, 2014 – approximately three weeks after Plaintiff allegedly sent his grievance appeal to Warden Buscher. *See* Exh. "C," at MTC0505. On June 18, 2014, Dr. Edwards completed a Second Step Response to Plaintiff's grievance, noting that no further action was needed. *See* Doc. [1], at 27.

## LAW AND ARGUMENT

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. A dispute must be genuine and the facts must be material." *Professional Managers, Inc. v. Fawer, Bryan, Hardy and Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). The moving party has a duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on the motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).

Once a properly supported motion for summary judgment is presented, the non-moving party must rebut with "significant probative evidence." *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1977). In other words, "The non-moving litigant is required to bring forth significant probative evidence demonstrating the existence of a triable issue of fact." *In re: Municipal Bond Reporting Anti-Trust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).

To defend against a proper summary judgment motion, one may not rely on mere denial of

material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. A non-moving party's response, by affidavit or otherwise admissible evidence, must set forth specific facts showing that as to the matter at hand there is a genuine issue of material fact for trial. *Woods*, 687 F.2d at 119.

### B. Plaintiff has failed to establish a constitutional claim against Warden Buscher regarding denial of adequate dental treatment

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Edwards v. Jones*, 2010 U.S. Dist. LEXIS 114633, 4 (S.D. Miss. Oct. 26, 2010). Supervisory prison officials "may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a 'sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id*., at 4-5, citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). "The mere delay of medical care can ... constitute an Eighth Amendment violation but only if there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). A prison official acts with deliberate indifference "only if (a) he knows that inmates face a substantial risk of serious bodily harm, and (b) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any

serious medical needs." *Id.* Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). The test for deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839. Negligent medical care simply does not constitute a valid Section 1983 claim. *Mendoza*, 989 F.2d at 193.

In the present action, there is no evidence whatsoever that Warden Buscher was personally involved in the alleged constitutional deprivation at issue. It is undisputed that Warden Buscher is not a dentist or otherwise trained medical professional, was not responsible for screening sick call requests or scheduling dental appointments, and had no personal involvement with any decisions regarding Plaintiff's dental treatment at EMCF. Plaintiff has also failed to present evidence that Warden Buscher received the Second Step Appeal that Plaintiff submitted to the ARP department on or about May 22, 2015, or that Warden Buscher was otherwise aware of his need for dental treatment.

At the omnibus hearing in this case, Plaintiff testified that Warden Buscher should be held responsible for inmate healthcare solely due to his position of authority at EMCF:

> THE COURT: ... Why are you suing Defendant Buscher?
>
> MR. KELLEY: Because the warden, he's responsible for making sure that I get dental treatment, him and – **he has overall responsibility**.
>
> THE COURT: Okay. You're not claiming that he personally did something or failed to do something?
>
> MR. KELLEY: He personally failed to make sure that the medical department – make sure that I was brought up there all the time, and make sure that sick call requests were screened. I mean, that's the warden's responsibility

|  | and health service administrator's responsibility to make sure that inmates' sick call requests are screened and they get up there on time. |
|---|---|
| THE COURT: | Is it your – what's the basis of your testimony that the warden is responsible for going through all of the sick call requests? |
| MR. KELLEY: | He's not responsible for going through each of them. He's responsible for making sure that inmates get their reasonably adequate and prompt treatment. He's not responsible to go through each of the sick call requests, but he's got a responsibility to make sure that, you know, if an inmate has a serious medical need, you know, him and the health service administrator, they are responsible for making sure that it's addressed. |
| THE COURT: | **You're suing him because of his position for being the warden and being the one that's ultimately in charge of the facility?** |
| MR. KELLEY: | **Yes, sir.** |

*See* Hearing Transcript, Exh. "A," at 6:4-7:6.

It is well established that Warden Buscher cannot be held liable under Section 1983 simply because of his supervisory position at EMCF. He also cannot be held vicariously liable based on the alleged acts or omissions of Plaintiff's doctors, dentists, nurses, mental health counselors, or other medical providers at EMCF. *Edwards*, 2010 U.S. Dist. LEXIS 114633 at 4.

Additionally, there is no evidence that Warden Buscher acted with deliberate indifference amounting to "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *See Norton*, 122 F.3d at 291. Plaintiff has failed to show that Warden Buscher was aware of Plaintiff's serious medical needs, if any – much less that Warden Buscher refused to treat him, ignored his complaints, or purposefully gave him improper treatment. Although there is no evidence

that Warden Buscher ever received the grievance appeal submitted by Plaintiff through the ARP process on May 22, 2014, it is undisputed that Plaintiff was treated by a dentist approximately three weeks later.  Further, Plaintiff had dozens of visits with various medical personnel at EMCF prior to his June 15, 2014 encounter with Dr. Rembert; therefore, he had numerous opportunities to discuss his dental problems with trained medical professionals.

There is simply no evidence whatsoever that Plaintiff's delay in receiving dental treatment or the tooth decay and gingivitis found by Dr. Rembert was due to any alleged acts or omissions of Warden Buscher.

For the foregoing reasons, there are no genuine issues of material fact as to Plaintiff's claims against Warden Buscher, and Warden Buscher is entitled to judgment as a matter of law.

## CONCLUSION

Plaintiff has failed to present any evidence that Warden Jerry Buscher was deliberately indifferent to Plaintiff's serious medical needs while he was housed at East Mississippi Correctional Facility.  Accordingly, there are no genuine issues of material fact as to Plaintiff's claims against Warden Buscher, and this Defendant should be dismissed with prejudice as a matter of law.

Respectfully submitted, this the 30th day of July, 2015.

                              JERRY BUSCHER, DEFENDANT

                              BY:    /s/ *Steven J. Griffin*
                                        OF COUNSEL

ROY A. SMITH, JR. - BAR # 7599
rsmith@danielcoker.com
STEVEN J. GRIFFIN - BAR # 103218
sgriffin@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400

POST OFFICE BOX 1084
JACKSON, MISSISSIPPI 39215-1084
TELEPHONE: (601) 969-7607
FACSIMILE: (601) 969-1116

### CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I hereby certify that I have mailed by United States Postal Service this document to the following non-ECF participants:

> Daniel Kelley, MDOC  #L2563
> Madison County Detention Center
> 2935 Highway 51 N
> Canton, MS 39046

*/s/ Steven J. Griffin*